# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-16-1251 |
| INNA TALLER, *et al.*, | * | |
| Defendants | * | |
| | *** | |
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-16-827 |
| CLIFTON T. PERKINS HOSPITAL CENTER, *et al.*, | * | |
| Defendants | * | |
| | *** | |
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-16-1252 |
| KIM JONES-FEARING, *et al.*, | * | |
| Defendants | * | |
| | *** | |

| | | |
|---|---|---|
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-16-2735 |
| CLIFTON T. PERKINS HOSPITAL CENTER, *<br>*et al.*, | | |
| | * | |
| Defendants | | |
| | *** | |
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-16-3403 |
| CLIFTON T. PERKINS HOSPITAL CENTER,*<br>*et al.*, | | |
| Defendants | * | |
| | *** | |
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-16-3854 |
| GOVERNOR LAWRENCE HOGAN, *et al.*, | * | |
| Defendants | * | |
| | *** | |
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-17-290 |
| GOVERNOR LAWRENCE HOGAN, *et al.*, | * | |
| Defendants | * | |
| | *** | |

| DANIEL THOMAS LANAHAN, | * | |
|---|---|---|
| Plaintiff | * | |
| v | * | Civil Action No. CCB-17-291 |
| GOVERNOR LAWRENCE HOGAN, *et al.*, | * | |
| Defendants | * | |
| | *** | |
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-17-3187 |
| CLIFTON T. PERKINS HOSPITAL CENTER,[1] *et al.*, | * | |
| Defendants | * | |
| | *** | |

## **MEMORANDUM**

Pending is a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, filed by defendants. ECF 31. Plaintiff has responded. ECF 33, 34, 35, 37.[2] Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the dispositive motion, construed as a motion for summary judgment, will be GRANTED.

---

[1] *Lanahan v. Clifton T. Perkins Hospital Center*, Civil Action No. CCB-17-3187 was filed on October 23, 2017, after the receipt of defendants' dispositive motion. Plaintiff raises identical claims in Civil Action No. CCB-17-3187 regarding his treatment at Perkins in regard to his medication and privilege level. Given the claims are similar as to those already pending before the court, the complaint shall be consolidated with plaintiff's other complaints regarding his care and treatment at Perkins. Further, although some of the plaintiff's complaints identify "Clifton T. Perkins Hospital Center" as the defendant, the plaintiff means "Clifton.T. Perkins Hospital Center." The court has made the correction where relevant.

[2] Plaintiff's numerous letters filed with the court have all been read and considered. *See e.g.*, ECF 4, 5, 6, 13-30.

3

**Background**

A.  Plaintiff's allegations:

Plaintiff, Daniel Lanahan, currently residing at the Thomas B. Finan Center in Cumberland, Maryland, filed these civil rights actions pursuant to 42 U.S.C. § 1983. At the time he filed the cases, he was undergoing mental health evaluation and treatment at the Clifton T. Perkins Hospital Center ("Perkins"). ECF 1. Plaintiff alleged that he was denied adequate medical care and various services by Perkins' employees. *Id.* Given that the complaints raised similar claims regarding plaintiff's confinement in and treatment at Perkins, defendants' motions to consolidate were granted. ECF 12.

1.  Medical Care

Plaintiff alleges that his diagnosis of schizoaffective disorder, bipolar type, is incorrect, and that instead he suffers from Attention Deficit Disorder or Attention Deficit Hyperactivity Disorder ("ADD/ADHD"). *See e.g., Lanahan v. Taller, et al.*, Civil Action No. CCB-16-1251, ECF 1, p. 3; *Lanahan v. Jones-Fearing, et al.*, Civil Action No. CCB-16-1252, ECF 1, p. 3; *Lanahan v. Clifton T. Perkins Hospital Center, et al.*, Civil Action No. CCB-16-3403, ECF 2, p. 3. He claims that he only requires Adderall to treat the ADHD. *Id.* Plaintiff states that psychiatric medications were administered to him despite his advising the clinical review panel on April 6, 2016, that the recommended medications made him feel like he was going to die and slowed his mental function. *Id.*

Plaintiff also claims that defendants denied him access to coffee, tea and other caffeinated beverages which he requested to ease his stomach pain. *Lanahan v. Clifton T. Perkins Hospital Center, et al.*, Civil Action No. CCB-16-3403, ECF 2, p. 3.

2. Denial of Privileges and Programming

Plaintiff alleges that his rights have been violated by defendants' refusal to move him to minimum security. *Lanahan v. Jones-Fearing, et al.*, Civil Action No. CCB-16-1252, ECF 1, p. 3; *Lanahan v. Clifton T. Perkins Hospital Center, et al.*, Civil Action No. CCB-16-3403 ECF 2, p. 3; *Lanahan v. Larry Lawrence Hogan, et al.*, Civil Action No. CCB-17-290, ECF 1, p. 3; *Lanahan v. Governor of Maryland Lawrence Hogan, et al.*, Civil Action No. JFM-17-291, ECF 1, p. 3. Plaintiff also alleges that staff have deprived him of his rights by reducing his privilege level from gold to bronze on November 22, 2016, *Lanahan v. Governor Larry Hogan, et al.*, Civil Action No. 16-3854, ECF 1, p. 3, and refusing to give him a platinum level on the 2 East Unit from June 2016 through January 2017, *Lanahan v. Larry Lawrence Hogan, et al.*, Civil Action No. CCB-17-290, ECF 1, p. 3.

Additionally, plaintiff claims that he was provided insufficient exercise and fresh air breaks, *Lanahan v. Governor of Maryland Lawrence Hogan, et al.*, Civil Action No. JFM-17-291, ECF 1, pp. 3-4; the television channels patients could watch were improperly restricted, *id.*, p. 4); and that his ability to share food with other patients and to buy take-out food was restricted, *Lanahan v. Taller, et al.*, Civil Action No. CCB-16-1251, ECF 1, p. 3; *Lanahan v. Governor of Maryland Lawrence Hogan, et al.*, Civil Action No. JFM-17-291, ECF 1, p. 3.

Plaintiff also alleges that his rights have been violated by defendants' failure to allow him access to a GED program and by not providing him special education classes. *Lanahan v. Larry Clifton T. Perkins Hospital Center, et al.*, No. CCB-16-827, ECF 1, p. 3.

3. Discharge

Plaintiff claims that he was illegally confined at Perkins and that defendants refused to release him. *Lanahan v. Taller, et al.*, Civil Action No. CCB-16-1251, ECF 1, p. 3; *Lanahan v. Jones-Fearing, et al.*, Civil Action No. CCB-16-1252, ECF 1, p. 3; *Lanahan v. Clifton T. Perkins Hospital Center, et al.*, Civil Action No. CCB-16-2735, ECF 1, p. 3; *Lanahan v. Clifton T. Perkins Hospital Center, et al.*, Civil Action No. CCB-16-3403, ECF 2, p. 3; *Lanahan v. Governor of Maryland Lawrence Hogan, et al.*, Civil Action No. JFM-17-291, ECF 1, p. 3.

Additionally, he claims that his social worker, Charlotte Bracy, failed to find a proper program for his release. *Lanahan v. Jones-Fearing, et al.*, Civil Action No. CCB-16-1252, ECF 1, p. 3.

4. Free Exercise Claim

Plaintiff alleges that defendants refused to let him go outside in order to conduct Native American religious ceremonies. *Lanahan v. Clifton T. Perkins Hospital Center, et al.*, Civil Action No. CCB-16-3403, ECF 2, p. 3; *Lanahan v. Governor of Maryland Lawrence Hogan, et al.*, Civil Action No. JFM-17-291, ECF 1, p. 3.

5. Ineffective Assistance of Counsel

Plaintiff claims that his Sixth Amendment right to counsel was violated when his legal assistance provider failed to file a petition for judicial review of the administrative law judge's approval of a clinical review panel decision. *Lanahan v. Taller, et al.*, Civil Action No. CCB-16-1251, ECF 3, p. 5.

6. Access to the Courts

Plaintiff generally claims that he was denied access to the law library, his ability to print unspecified papers was restricted, and he was not provided dictation software to assist him with his legal work. *Lanahan v. Governor of Maryland Lawrence Hogan, et al.*, Civil Action No. CCB-17-290, ECF 1, p. 3.

B.  Record evidence

The reason for plaintiff's placement at Perkins is well documented by this court. As a result of an altercation while plaintiff was committed to the Division of Correction, plaintiff was criminally charged with second degree assault against a Division of Correction employee. *See Lanahan v. Maryland, et al.*, Civil Action No. JFM-15-2030, ECF 29-5, p. 1. On June 22, 2012, the District Court of Maryland for Howard County ordered that plaintiff be evaluated to determine if he was competent to stand trial for the assault charge. *Id.*, ECF 29-7. Plaintiff was evaluated, and on August 31, 2012, the District Court of Maryland for Howard County found plaintiff incompetent to stand trial and a danger to himself or others. *Id.*, ECF 29-8. Plaintiff was ordered committed to the Department of Health and Mental Hygiene. *Id.*

On September 5, 2014, the District Court of Maryland for Howard County found plaintiff

7

incompetent to stand trial and not likely to regain competence within the foreseeable future. *Id.*, ECF 29-9. Plaintiff was ordered civilly committed and the assault charge was dismissed the following day. *Id.*, ECF 29-5, p. 1. Plaintiff remained civilly committed after an administrative law judge found him a danger to himself or others. *Id.*, ECF 18.

1.  Medical Care

Plaintiff's treating physicians aver that plaintiff is diagnosed with schizoaffective disorder, bipolar type. ECF 31-6, ¶ 5 (El-Sayed Affidavit); ECF 31-7, ¶ 4 (Al-Samarrai Affidavit); ECF 31-8, ¶ 4 (Jones-Fearing Affidavit); ECF 31-3, ¶ 7 (Miranda Affidavit). Plaintiff's mental health illnesses cause paranoia, delusional thinking, grandiose delusions, bizarre delusions, persecutory delusions, behavioral disorganization, and threatening and assaultive behavior. ECF 31-6, ¶ 5; ECF 31-7, ¶ 4; ECF 31-7 ¶ 4; ECF 31-3 ¶ 7. These delusions include plaintiff's belief that the CIA, NSA, and other governmental agencies are experimenting on plaintiff, and that he was an undercover operative trained by the Department of Defense and sent to the Patuxent Institution (a Maryland Department of Public Safety and Correctional Service detention facility) to uncover a government conspiracy. Plaintiff has also claimed that while housed at Patuxent he was implanted with a device and Patuxent staff experimented on him by pumping gas into his cell. *Id.*

To treat his mental illnesses, plaintiff has been prescribed antipsychotic and mood stabilizing medication. ECF 31-6, ¶ 6; ECF 31-7, ¶ 5; ECF 31-8, ¶ 6; ECF 31-3, ¶ 9. Doctors El-Sayed, Al-Samarrai, Jones-Fearing and Miranda each aver that antipsychotic medication and

mood stabilizers are the standard of care for plaintiff's diagnoses. *Id.* Plaintiff denies that he suffers from schizoaffective disorder and claims instead that he suffers from Attention Deficit Disorder ("ADD") or Attention Deficit Hyperactivity Disorder ("ADHD"). ECF 31-6, ¶ 7; ECF 31-7, ¶ 6; ECF 31-8, ¶ 5; ECF 31-3, ¶ 8. As a result, plaintiff has regularly denied the need for antipsychotic medication or mood stabilizers. ECF 31-6, ¶¶ 7, 8. Instead, plaintiff requested cannabis, methadone, and Xanax, which are not the standard of care for treating schizoaffective disorder. ECF 31-6, ¶8. Indeed, Dr. El-Sayed avers that given plaintiff's substance abuse history, the drugs he requests could exacerbate his paranoia, irritability, and aggression. *Id.* Dr. El-Sayed further states that even if plaintiff suffers from another disorder, such as ADD or ADHD, the proper treatment would be to prioritize treating his mood and psychiatric illnesses before treating any underlying cognitive impairment or anxiety disorder. ECF 31-6, ¶ 9.

A clinical review panel met pursuant to MD. CODE ANN., HEALTH-GEN. § 10-708 on April 6, 2016, to review the medication regimen that had been prescribed to treat plaintiff's mental illnesses, but which plaintiff refused to take. ECF 31-8, ¶¶ 6-8. At that time, Loxapine, Aripiprazole and Olanzapine were prescribed to treat plaintiff's psychotic symptoms and Carbamazepine was prescribed to treat plaintiff's mood disorder symptoms. ECF 31-8, ¶ 8; ECF 31-10, p. 3 (Clinical Review Panel decision). The panel considered plaintiff's concerns that the medication made him violent and hallucinatory, but determined, based upon plaintiff's threats to kill a person on the unit, the threatening letters he sent to government officials, and the threatening phone calls he made to his mother, that he posed a danger to others and that the medication prescribed was a reasonable exercise of professional judgement as the standard

9

treatment for plaintiff's psychotic symptoms and mood disorders. ECF 31-8, ¶ 9; ECF 31-10, pp. 2-5.

Plaintiff has also been "diagnosed with gastroenteritis and has a history of acidity imbalance and dyspepsia." ECF 31-9, ¶ 4 (Karim Affidavit). He was prescribed Pantoprazole, Maalox, and Zantac to treat these issues. *Id.* In December of 2015, plaintiff began refusing Zantac and requesting tea and other caffeinated beverages to treat his condition. *Id.*, ¶¶ 5, 6. Plaintiff's requests for these beverages were denied because they increase gastric acid and worsen the condition. *Id.*, ¶ 7. Dr. Karim avers that caffeinated products are not the standard treatment for such problems and can instead aggravate them. *Id.*, ¶¶ 4, 7.

2. Denial of Privileges and Programming

Miranda avers that "Perkins operates a clinical status system based on patient behavior and adherence to ward rules." ECF 31-3, ¶ 11. All policies regarding breaks, exercise, use of television, and food sharing are made in the exercise of professional judgment in order to maintain the order of the hospital. *Id.*, ¶ 20. The clinical status system provides for levels of privilege ranging from platinum, the greatest privilege, to restricted, the lowest privilege. *Id.*, ¶ 11. Patients on the highest levels have the greatest flexibility and lowest staff supervision. A patient's clinical status is discussed weekly. In order to reach the platinum level a patient must comply with all ward rules, take all prescribed medication, follow directions from staff, and attend assigned group therapies. *Id.* When plaintiff was compliant with his medication, he used racial slurs and epithets toward staff, failed to follow staff instruction, and refused to attend assigned groups. ECF 31-3, ¶ 12. As a result, plaintiff was generally assigned a bronze or silver status. ECF 31-3, ¶ 12.

In order for a patient's security status to be lowered the patient's psychotic symptoms need to be successfully managed and the patient must show a willingness to attend all recommended group therapy sessions. ECF 31-3, ¶¶ 13-14. Throughout 2016, despite treatment, plaintiff remained delusional, and failed to attend recommended group therapy sessions. *Id.*, ¶¶ 10, 14. Miranda avers that due to plaintiff's ongoing psychosis and refusal to attend groups he remained on maximum security. *Id.*, ¶ 14.

Dr. Miranda further avers that during 2016, there was no recommendation plaintiff be stepped down to minimum security or that his privilege level be increased to gold or platinum due to his ongoing delusions, poor behavior, and failure to attend recommended groups. ECF 31-3, ¶¶ 12, 14.

All patients, except those on restricted access due to behavioral or safety issues, are permitted outside for fresh air breaks twice a day, weather permitting. ECF 31-3, ¶ 15. That same class of patients is permitted to use the gym twice per week in addition to attending group exercise classes. *Id.* Units in the hospital are assigned shifts in accordance with a set schedule in order to provide each unit equal time outside each day, and to avoid crowds of patients which are large and difficult to supervise. *Id.*, ¶ 16.

Each unit has a television in the day room. Each unit determines which channels are accessible by patients on that unit's dayroom television. ECF 31-3, ¶ 17. Treatment teams often decide to limit violent and sexually explicit stations as it could agitate patients in the unit. *Id.*

As a policy, Perkins limits the sharing of food between patients in order to avoid conflicts as in the past food sharing has led to fights between patients. ECF 31-3, ¶ 18. Additionally, food sharing is prohibited because it increases the likelihood patients will not adhere to any

11

restrictions on their diet they may have. *Id.* Additionally, for a time Perkins voluntarily purchased delivery meals ("buy outs") for patients, but the program was ended. *Id.*, ¶ 19. Nevertheless, patients remain able to purchase food delivery using their own funds. *Id.*

Malinda Lawson, a teacher employed at Perkins, avers that Perkins operates a General Education Diploma ("GED") class for patients. ECF 31-13, ¶ 2 (Lawson Affidavit). Plaintiff was enrolled in the GED program in May of 2013 but stopped attending after his psychosis worsened and he became more paranoid and delusional. *Id.*, ¶ 3. Plaintiff did not return to the GED program due to his continued delusions. *Id.*, ¶ 4; ECF 31-3, ¶ 21.

3. Discharge

As an involuntarily committed patient, plaintiff was entitled to and received semi-annual hearings to determine whether he should be retained or released. *See* MD. CODE ANN. CRIM. PROC. § 3-106(e); COMAR 10.21.0108C. Plaintiff was committed to Perkins pursuant to the Maryland Code on September 5, 2015. ECF 31-4 (Order for Involuntary Civil Commitment to Psychiatric Facility). Until July of 2017, plaintiff remained at Perkins as an involuntary patient under MD. CODE ANN. HEALTH-GEN. §§ 10-619-10-632 and COMAR § 10.21.08. On July 27, 2017, plaintiff signed a voluntary commitment agreement that released him from any obligation to remain in treatment.[3] ECF 31-3, ¶ 5.

On January 29, 2016, in advance of plaintiff's scheduled involuntary admission retention hearing, plaintiff's social worker, Charlotte Bracy, sent an application for residential rehabilitation services to the local core service agency in Carroll County, in the event that the

---

[3] Plaintiff has recently updated his address to reflect that he now resides at the Thomas B. Finan Center, a multi-purpose psychiatric facility in Cumberland, Maryland maintained by the Maryland Department of Health and Hygiene. ECF 36. See also http://www.tbfinancenter.com/ (last visited January 18, 2018).

administrative law judge found plaintiff should be discharged. ECF 31-11 (Application for Residential Rehabilitation Services). The proposed provider denied plaintiff admission into its program due to plaintiff's poor insight into his mental illness[4] and continuing delusions. ECF 31-12 (Residential Rehabilitation Program Disposition Form).

4. Free Exercise

Perkins offers regular religious services to its patients who practice the following faiths: Catholic, Protestant, Islamic, Jewish, and Jehovah's Witness. ECF 31-14, p. 4 (Clifton T. Perkins Hospital Center Handbook). Patients who practice other faiths may request additional religious services. *Id.* Although Native American services were not offered while plaintiff resided at Perkins, he was able to request them, but did not do so from Miranda. ECF 31-3, ¶ 22.

**Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*,

---
[4] "Insight" is a term of art that refers to a patient's understanding of her own mental illness.

13

477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**Analysis**

Involuntarily committed patients at state psychiatric facilities are afforded liberty interests under the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment requires the state to provide involuntarily committed patients with safe conditions, freedom from bodily restraint, and with "minimally adequate or reasonable training to ensure safety and freedom from undue restraint." *See Youngberg v. Romeo*, 457 U.S. 307, 315-19 (1982). "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321-22 (analyzing claims that hospital officials knew a patient was being injured but failed to intervene, improperly restrained patient for prolonged periods, and were not providing appropriate treatment or training for his mental retardation); *see also Patten v. Nichols*, 274 F.3d 829, 837-38 (4th Cir. 2001) (applying *Youngberg* standard to an involuntarily committed psychiatric patient.)

Under the *Youngberg* standard, the state must provide plaintiff with "adequate food,

shelter, clothing, and medical care." *Id.* at 315. Further, as an involuntarily committed patient in a State psychiatric facility, plaintiff has a "'significant' constitutionally protected 'liberty interest' in 'avoiding the unwarranted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003), (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)). According to the Fourth Circuit, there is "no constitutionally significant difference between the nature of the protection-from-harm claims . . . and the denial-of-medical-care [claims]." *Patten*, 274 F.3d at 837-38.

Under the *Youngberg* framework the court must also apply the "professional judgment" standard, which states that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised." *Id.* at 321. Decisions made by professionals are presumptively valid and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323.[5]

1. Medical Care

Plaintiff complains about the fact that he was hospitalized, did not receive medication for ADD or ADHD, and that he was not provided caffeinated beverages to treat his stomach issues. He also complains that he was administered psychiatric medications despite his having advised the clinical review panel that the medications made him feel like he was going to die and slowed his mental function. But the record shows that plaintiff received appropriate and regular

---

[5] In applying this standard, the Fourth Circuit has held that a defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional." *Patten*, 274 F.3d at 845.

15

treatment for his mental and physical illnesses. The medications he requested did not comport with the standard of care for his diagnosed illnesses. He does not identify who provided inadequate medical care, nor does he allege how there was a "substantial departure from accepted professional judgment." In short, he has not provided any evidence to raise a genuine dispute that he received improper treatment. As such, the defendants' motion for summary judgment on this claim will be granted.

2. Denial of Privileges and Programming

Involuntarily committed patients maintain "constitutionally protected interests in . . . reasonably nonrestrictive confinement conditions." *Youngberg*, 457 U.S. at 324. The court must balance the "individual's interest in liberty against the State's asserted reason for restraining individual liberty" and the "presumption of correctness" afforded to the judgment exercised by treatment professionals. *Id.*, at 320, 324.

Perkins provided its patients a series of privilege and security levels which were based on the patient's behavior. Plaintiff was never recommended for a decrease in his security level or an increase in his privilege level due to his own actions, which included, at various times, refusing to take prescribed medications and refusal to follow the directions of staff. Plaintiff's own conduct necessitated his remaining at maximum security and a lower privilege level. The undisputed record evidence demonstrates that restrictions placed on patients, including plaintiff, regarding access to the outdoors, television, meal sharing, etc., were designed for the orderly administration of the hospital and based on the reasonable judgments of the physicians tasked with caring for the patients.

The limitation on plaintiff's access to GED services is viewed through the same

16

*Youngberg* reasonableness standard. Plaintiff was unable to access educational services due to his delusional behavior. The decision to remove plaintiff from the GED classes appears reasonable under the circumstances.

Plaintiff has not alleged, much less demonstrated, that any of the decisions regarding his security, privileges, or programming were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. The undisputed evidence demonstrates that defendants exercised professional judgment in crafting and imposing the restrictions on plaintiff's activities. Moreover, the restrictions furthered an important governmental interest: the orderly administration of the hospital and protection of staff and patients, including plaintiff.

3. Discharge

As previously noted, plaintiff received all the process he was due when he was committed to Perkins. He was lawfully held at Perkins and provided semi-annual hearings regarding his continued commitment. In order to prepare for his possible release, Social Worker Bracy applied for a residential rehabilitation program, but the application was rejected due to plaintiff's poor insight and continued delusions. Plaintiff's psychotic behavior and poor insight into his mental illness remained throughout his admission to Perkins and supported his team's declining to recommend his discharge to the community at his commitment hearing. It was a reasonable exercise of professional judgment to decline to recommend plaintiff's discharge. As such, defendants are entitled to summary judgment.

4. Free Exercise

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof" U.S. Const. amend. I. Although the Fourth Circuit has not established the framework to be applied to Free Exercise cases brought by involuntarily committed patients, other courts have applied the standard applied in the prison context. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012) (applying *Turner* framework to civilly committed patient's free speech claims); *Thompson v. Vilsack*, 328 F. Supp. 2d 974, 977-78 (S.D. Iowa 2004) (applying *Turner* standard to civilly committed sexual predator's free exercise claim). Prison restrictions that impinge on the free exercise of religion but are reasonably related to legitimate penological interests do not violate the Constitution. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). The test to determine whether the restrictions are justified requires examination of whether there is a rational connection between the asserted governmental interest and the regulation in question. In addition, the court must examine: whether the interest is legitimate and neutral, whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive. *Id.*

Plaintiff was free to go outside during his scheduled unit outdoor time. He has not explained why he was unable to practice his religious services during that time. The unit's outdoor recreation was scheduled in order to avoid large and unmanageable crowds of patients and any restriction on plaintiff was therefore reasonably related to the goal of ensuring patient's safety. The policies regarding religious observances at Perkins did not single out plaintiff. Most importantly, there is simply no evidence that plaintiff requested he be able to practice Native

American religious services or that the type of Native American religious service that plaintiff wished to engage in was required to occur outside. Accordingly, the defendants' motion for summary judgment on this claim will be granted.

5. Ineffective Assistance of Counsel

Plaintiff's claim that his attorney, Terri Mason, failed to file a petition for judicial review of the administrative law judge's approval of a clinical review panel's decision to forcibly medicate plaintiff is similarly unpersuasive. Plaintiff received all of the process he was due at his hearing. Due process rights are satisfied in an involuntary medication hearing when an independent lay adviser is present at the hearing. While Maryland affords additional protections to its patients by contracting with a legal assistance provider to represent patients at the clinical panel review, MD. CODE ANN., HEALTH-GEN. § 10-708(I)(4)(ii)-(iii), such representation is not a constitutional right as there is no constitutional right to counsel in those proceedings. *Harper*, 494 U.S. at 236. Nevertheless, plaintiff was provided with an attorney at his hearing. Additionally, under Maryland law the advisor is not required to represent the patient in any subsequent petition for judicial review. *See generally* MD. CODE ANN. HEALTH-GEN. §§ 10-708(j)(1), 10-708(I).

6. Access to Courts

Courts have held that involuntarily committed patients, like prisoners, retain their right to meaningful access to the courts in order to ensure they have recourse for violations of fundamental rights. *See Cornett v. Conovan*, 51 F.3d 894, 897-98 (9th Cir. 1995); *A.M. v. New Mexico Dept. of Health*, 148 F. Supp. 3d 1232, 1297 (D. N.M. 2015). Like prisoners, involuntarily committed patients must establish actual injury to make out a claim of insufficient

19

access to the courts. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997). Plaintiff has failed to allege, much less demonstrate, how the alleged restrictions on his access to the library, printing, or dictation software actually impeded his access to the courts. The defendants' motion for summary judgment on this claim will be granted.

## Conclusion

For the aforementioned reasons, defendants' motion to dismiss, or in the alternative for summary judgment, construed as a motion for summary judgment, shall be GRANTED. A separate Order follows.

3/23/18
Date

*CCB*

Catherine C. Blake
United States District Judge